Death Opinion



 










 


IN THE COURT OF CRIMINAL APPEALS


OF TEXAS







NO. 74,523






RONALD JAMES HAMILTON, JR., Appellant



v.


 

THE STATE OF TEXAS






APPEAL FROM HARRIS COUNTY






 Per curiam. 



 The appellant, Ronald James Hamilton, Jr., pled guilty and was convicted in
November 2002 of capital murder, an offense that was committed on November 7, 2001. (1)
Pursuant to the jury's answers to the special issues set forth in Code of Criminal Procedure
Article 37.071, Sections 2(b) and 2(e), the trial judge sentenced the appellant to death. (2)
Direct appeal to this Court is automatic. (3) The appellant raises eight points of error. We
affirm.

 In his first point of error, the appellant claims that the trial court erred when it failed
to admonish him of the applicable range of punishment, in violation of the Fifth and
Fourteenth Amendments to the United States Constitution. After the appellant pled guilty to
the charged offense of capital murder, the trial court proceeded to ask the appellant
questions concerning the voluntariness of his plea. The trial court did not, however, on the
record, inform or discuss with the appellant the punishment range for a capital offense. The
appellant urges this Court to reconsider our opinion in Aguirre-Mata v. State, 125 S.W.3d
473 (Tex. Cr. App. 2003), and to adopt the reasoning of Judge Johnson's dissenting opinion
in that case. He contends that our opinion in Aguirre-Mata is at odds with Boykin v.
Alabama, 395 U.S. 238 (1969), and that the complete failure of the trial court to admonish
him of the applicable range of punishment is a due process violation that amounts to
"structural error" requiring reversal without a showing of harm. We held in Aguirre-Mata that the trial court's failure to show on the record that a defendant entering a plea of
guilty was admonished on the range of punishment for the offense was nonconstitutional
error subject to the harm analysis under Rule of Appellate Procedure 44.2(b). 125 S.W.3d
at 474. We noted that "Boykin did not specifically set out what due process requires to be
'spread on the record'" and that "Boykin clearly did not hold that due process requires the
equivalent of the Article 26.13(a) admonishments or an admonishment on the range of
punishment." Id. at 475. Rather, "admonishing a guilty-pleading defendant that the
consequences of a guilty plea are the admission of the factual elements of the charged
crime and a waiver of various constitutional rights without admonishing the defendant on
the range of punishment literally satisfies this [Boykin] test." Id. at n.4. We decline to
revisit our holding in Aguirre-Mata.

 The appellant does not argue that he had no knowledge of the possible penalties for
capital murder or that his plea was actually involuntary. Rather, he complains only about the
absence in the record of any admonishment on the range of punishment. The appellant has
failed to show that the absence of an admonishment on the range of punishment resulted in
an involuntary plea or a violation of due process in this case. Point of error one is
overruled. 

 In his second point of error, the appellant claims that the trial court's failure to
admonish him of the range of punishment violated Article 26.13(a)(1). The State impliedly
concedes that the trial court erred in failing to expressly admonish the appellant according
to Article 26.13. Indeed, the trial court's failure was error under Article 26.13. Burnett v.
State, 88 S.W.3d 633, 635 (Tex. Cr. App. 2002). We must review this statutory error under
the harm analysis of Rule of Appellate Procedure 44.2(b). Id. The appellant argues that
harm should be found when there is no direct evidence that the guilty-pleading defendant
understood the range of punishment. However, we explicitly rejected this approach in
Burnett:

 [A] reviewing court must independently examine the record for indications
that a defendant was or was not aware of the consequences of his plea and
whether he was misled or harmed by the trial court's failure to admonish him
of the punishment range. The court of appeals . . . inverted the first part of the
required [harm] analysis, stating essentially that the record must clearly show
that appellant knew the consequences of his plea. The correct test is just the
opposite--to warrant a reversal on direct appeal, the record must support an
inference that appellant did not know the consequences of his plea.
Reviewing courts must examine the entire record to determine whether, on
its face, anything in that record suggests that a defendant did not know the
consequences of his plea--here, the range of punishment. Of course, a silent
record would support such an inference. The reviewing court also may
simultaneously consider record facts from which one would reasonably infer
that a defendant did know the consequences of his plea or, in this case, was
actually aware of the range of punishment. It is ultimately the responsibility
of the reviewing court to determine whether the record supports or negates
the defendant's assertion of harm. If, after a conscientious examination of the
record, the reviewing court is left with "grave doubt" on the matter, the error
is not harmless.


Id. at 638-39. Accordingly, we must examine the record for indications that the appellant
was not aware of the consequences of his plea and was misled or harmed by the trial
judges's failure to admonish him. Id. at 638. 

 In this case, the record fails to support an inference that the appellant did not know
the punishment range for his offense. Although the trial court did not explicitly admonish
the appellant on the punishment range for his offense, throughout jury selection, the parties
openly discussed the punishment range at length in the appellant's presence. At the
beginning of voir dire, at which the appellant was present, the trial court informed the panel
that the State was seeking the death penalty, and during individual voir dire, the prosecutor
and defense counsel asked each venire member multiple questions concerning the death
penalty, life imprisonment, and related issues. Therefore, even though the trial judge erred
by failing to comply with Article 26.13(a), the error was harmless. (4) Point of error two is
overruled.

 In his third point of error, the appellant claims that the trial court erred in failing to
admonish him of his right against compulsory self-incrimination, in violation of the Fifth
and Fourteenth Amendments to the United States Constitution. The appellant argues that his
plea of guilty before a jury was tantamount to testimony because, in entering such a plea, he
admitted all the facts necessary to support a finding of guilt. He contends that the court's
failure to admonish him of his right not to incriminate himself by pleading guilty "impacted
the voluntariness" of his plea and violated his due process rights . 

 However, "there is no requirement that [the] appellant be informed of his right
against self-incrimination at trial upon a plea of guilty." Williams v. State, 674 S.W.2d 315,
320 (Tex. Cr. App. 1984). Boykin does not hold that the failure to admonish a guilty-pleading defendant of the privilege against self-incrimination violates due process. Point of
error three is overruled. 

 In his fourth point of error, the appellant contends that his guilty plea violated
Article 1.13(a) which prohibits a defendant against whom the State is seeking the death
penalty from waiving his right to a jury trial. 

 In Williams, we held that "a plea of guilty before a jury is a trial by jury and does not
constitute a waiver of trial by jury." Id. Although the appellant concedes this holding, he
nevertheless argues that Williams cannot be squared with Boykin and should therefore be
overruled. He argues that the following language from Boykin is inconsistent with
Williams: 

 Several federal constitutional rights are involved in a waiver that takes
place when a plea of guilty is entered in a state criminal trial. First, is the
privilege against compulsory self-incrimination guaranteed by the Fifth
Amendment and applicable to the States by reason of the Fourteenth. Malloy
v. Hogan, 378 U.S. 1. Second, is the right to trial by jury. Duncan v.
Louisiana, 391 U.S. 145. Third, is the right to confront one's accusers.
Pointer v. Texas, 380 U.S. 400. We cannot presume a waiver of these three
important federal rights from a silent record.


Boykin, 395 U.S. at 243. In noting that guilty pleas generally involve a waiver of three
rights under the federal constitution, Boykin did not distinguish between pleas made to the
court and those made before a jury. Although the Court noted that a jury assessed the
punishment in Boykin, it is not clear from the opinion whether the petitioner's guilty plea
was made to the court or before the jury. See id. at 240 (stating petitioner pleaded guilty at
arraignment). 

 The appellant further argues that if a defendant who pleads guilty before a jury is
having a jury trial under Texas law, then it makes no sense to require any admonishments
regarding the waiver of the constitutional rights discussed in Boykin. But as we stated in
Williams, these rights were never waived. Williams, 674 S.W.2d at 319. Thus, there is no
requirement that a defendant be informed of his right against self-incrimination, his right to
confront and cross-examine witnesses, and his right to trial by jury at a plea of guilty before
the jury. Id. at 320.

 By entering a plea of guilty before a jury and having a jury return a verdict regarding
the special issues under Article 37.071, the appellant received a jury trial and did not waive
his right to trial by jury. Id., at 319; see also Matchett v. State, 941 S.W.2d 922, 930 (Tex.
Cr. App. 1996)(plurality op.)(stating "important factor in determining whether appellant has
had a jury trial in a capital murder case is that the jury returned a verdict regarding the
special issues under Article 37.071"), cert. denied, 521 U.S. 1107 (1997). Point of error
four is overruled.

 In his fifth point of error, the appellant claims that Article 37.071, Sections 2(d)(2)
and 2(f)(2), affirmatively mislead the jury regarding its role in the sentencing process,
thereby creating an unacceptable risk that the death penalty will be imposed in an arbitrary
manner, in violation of the Fifth, Eighth, and Fourteenth Amendments to the United States
Constitution. More specifically, the appellant complains of the trial court's failure to
instruct the jury of the consequences of its failure to answer a special issue. He argues that
failing to inform the jury of the consequences of a failure to agree to a special issue is
contrary to language in the Supreme Court's opinion in Jones v. United States, 527 U.S.
373, 381-82 (1999), which recognized that "a jury cannot be 'affirmatively misled
regarding its role in the sentencing process.'" 

 However, Jones also recognized that jurors are not affirmatively misled when they
are not informed of the consequence of their failure to agree because such an instruction
has "no bearing on the jury's role in the sentencing process" but that it instead "speaks to
what happens in the event that the jury is unable to fulfill its role." Id. Point of error five is
overruled.

 In his sixth point of error, the appellant claims that the trial court erred by refusing
his requested instruction which would have informed the jurors that, in answering the
mitigating special issue, they were free to consider any evidence they believed to be true. 
The requested charge read:

 In arriving at an answer to Instruction No. 5 (mitigation) . . . [e]ach juror may
consider any evidence that the juror believes is true. No two jurors have to
agree on the truth of the same mitigating evidence. A juror may answer
Instruction No[.] 5 with a "yes" for any reason that justifies that response in
the mind of the juror.


The trial court denied the requested charge.

 Article 37.071, Section 2(e)(1) provides that the mitigation issue read as follows:


 Whether, taking into consideration all of the evidence, including the
circumstances of the offense, the defendant's character and background, and
the personal moral culpability of the defendant, there is sufficient mitigating
circumstance or circumstances to warrant that a sentence of life
imprisonment rather than a death sentence be imposed. 


In addition, the jury is to be instructed that it "shall consider mitigating evidence to be


evidence that a juror might regard as reducing the defendant's moral blameworthiness." 


Art. 37.071, § 2(f)(4). The appellant was not entitled to a charge that differed from or


expanded upon the language in Article 37.071 The trial court did not abuse its discretion in
denying the appellant's requested charge.

 The appellant also complains about the charge that was given which instructed the
jury that in answering the mitigation issue, it "shall consider mitigating evidence to be
evidence that a juror might regard as reducing the defendant's moral blameworthiness,
including evidence of the defendant's background, character, or the circumstances of the
offense that mitigates against the imposition of the death penalty." The appellant points out
that under the statute, the jury is to be instructed that it "shall consider mitigating evidence
to be evidence that a juror might regard as reducing the defendant's moral
blameworthiness" without further elaboration. He argues that the court's instruction
unfairly limited what jurors might properly consider to be mitigating evidence. 

 However, at trial, the appellant did not object to the charge given on these grounds.
Therefore, the record will have to show that the appellant suffered egregious harm from any
error in the instruction for the case to be reversible. Almanza v. State, 686 S.W.2d 157,
171 (Tex. Cr. App. 1984)(op. on reh'g).

 The mitigation issue itself requires the jury to "tak[e] into consideration all of the
evidence, including the circumstances of the offense, the defendant's character and
background, and the personal moral culpability of the defendant" in deciding whether "there
is sufficient mitigating circumstance or circumstances to warrant that a sentence of life
imprisonment rather than a death sentence be imposed." Art. 37.071, § 2(e)(1). Thus, the
charge given added nothing new to the definition of mitigating evidence. Moreover, the jury
was not limited in its consideration of mitigating evidence to those items listed; the charge
listed the items as a non-exclusive list, indicated by the use of the word "including." We
hold that the appellant did not suffer egregious harm as a result of the instructions given.
Point of error six is overruled.

 In his seventh point of error, the appellant contends that he received ineffective
assistance of counsel. During the State's punishment case-in-chief, Ahmad Naimi, a co-worker of the victim, testified about the victim and his life. Relying on language from
Mosley v. State, 983 S.W.2d 249, 263-64 (Tex. Cr. App. 1998), cert. denied, 526 U.S.
1070 (1999), the appellant argues that counsel was ineffective for failing to object to
Naimi's testimony on the ground "that mitigation was not yet an issue in the case." He
reasons that he had the option of affirmatively waiving reliance on and submission of the
mitigation issue at the end of the State's case, and thus Naimi's testimony was not relevant
until evidence on mitigation had been introduced. 

 The record on direct appeal is generally inadequate to show that counsel's conduct
fell below an objectively reasonable standard of performance. Bone v. State, 77 S.W.3d
828, 833 (Tex. Cr. App. 2002); Thompson v. State, 9 S.W.3d 808, 813 (Tex. Cr. App.
1999). "If counsel's reasons for his conduct do not appear in the record and there is at least
the possibility that the conduct could have been legitimate trial strategy, we will defer to
counsel's decisions and deny relief on an ineffective assistance claim on direct appeal."
Ortiz v. State, 93 S.W.3d 79, 88 (Tex. Cr. App. 2002), cert. denied, 538 U.S. 998 (2003). 

 Here, counsel's reasons do not appear in the record. It is at least possible that
counsel had some strategic reason for not objecting to the evidence on the grounds now
urged on appeal. Accordingly, we will defer to counsel's decision. Point of error seven is
overruled.

 In his eighth point of error, the appellant complains that the trial court erred by not
defining "probability," "criminal acts of violence," and "a continuing threat to society," in
violation of the Sixth, Eighth, and Fourteenth Amendments to the United States
Constitution. We have repeatedly rejected such claims. Rayford v. State, 125 S.W.3d 521,
532 (Tex. Cr. App. 2003). Point of error eight is overruled.

 The judgment of the trial court is affirmed. 


En banc.

Delivered October 13, 2004.

Do not publish
1. Tex. Penal Code § 19.03(a). 
2. Tex. Code Crim. P. art. 37.071 §2(g). Unless otherwise indicated, all references to
Articles refer to the Texas Code of Criminal Procedure. 
3. Art. 37.071 §2(h). 
4. See Tex. R. App. P. 44.2(b).