**Opinion issued December 19, 2013**



In The

# Court of Appeals
### For The
# First District of Texas

—————————————————

**NO. 01-12-00661-CR**
**NO. 01-12-00662-CR**
**NO. 01-12-00663-CR**

———————————

**TERRY SMITH, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 400th District Court**
**Fort Bend County, Texas**
**Trial Court Case No. 10-DCR-055807A**

---

**MEMORANDUM OPINION**

Appellant Terry Smith pleaded guilty in front of the judge and again, after

voir dire, in front of the jury to the offenses of (1) theft, (2) misapplication of

fiduciary property, and (3) money laundering, each involving an aggregate value of

over $200,000.[1]  The jury assessed the following punishment: (1) 25 years in prison for the theft offense; (2) 20 years in prison for misapplication of fiduciary property offense; and (3) 20 years in prison for the money laundering offense, to be served concurrently, with a $10,000 fine for each offense.

Appellant identifies the same three issues in each appeal.  She contends (1) we should abate the appeals to permit a hearing on her motion for new trial; (2) the trial court erred when it denied her motion to withdraw her guilty pleas; and (3) the evidence was insufficient under Code of Criminal Procedure article 1.15 to support her pleas.[2]

We affirm the judgment of conviction in each appeal.

### Background

In 1975, appellant began working for Flexicore, a company that manufactures concrete products used in the construction industry.  Flexicore is a privately held company owned by the three families who founded the business in 1953.  Over the years, appellant worked her way up in the company, ultimately becoming controller.  In that position, appellant was responsible for Flexicore's

---

[1]  *See* TEX. PENAL CODE ANN. § 31.03(e)(7) (Vernon Supp. 2013) (theft); *id.* § 32.45(a)(1), (c)(7) (misapplication of fiduciary property); *id.* § 34.02(a)(1), (e)(4) (Vernon 2011) (money laundering); *see also id.* § 31.09 (Vernon 2011).

[2]  *See* TEX. CODE CRIM. PROC. ANN. art. 1.15 (Vernon 2005).

accounts payable and receivable.  Appellant's husband, an engineer, sometimes did contract work for Flexicore through his company, Alliance Engineering.

In 2008, an outside auditor flagged a $36,000 check signed by appellant and made payable to Alliance Engineering.  This amount was higher than usual, and there were no underlying invoices or documentation supporting the check. Flexicore's president, Joseph Phillips, asked appellant for the backup documentation to support the check.  Instead of documentation, appellant gave Phillips a personal check for the amount and told him that she had made a mistake and wanted to make restitution.  Phillips informed Flexicore's board of directors, which instructed Phillips to terminate appellant.  When he met with appellant to terminate her, Phillips informed appellant that the company planned to conduct a detailed audit to determine whether there were other unauthorized transactions. Appellant told Phillips that they would find more.  When he asked her why she had taken the money, appellant told Phillips that she wanted more things than she could afford.

Sandra Jenkins was a member of the team that reviewed Flexicore's records to determine how much money appellant had taken.  Jenkins is a member of Flexicore's board of directors, a certified public accountant, and a part owner of the company.  Her father was a founding member of Flexicore.

3

A review ultimately determined that appellant had stolen a total of $1.3 million from Flexicore using two means. Appellant wrote payroll checks to herself for much more than she was being paid by Flexicore, and she signed issued accounts payable checks to her husband's company for unauthorized amounts.

Flexicore filed a civil lawsuit against appellant. The suit settled with appellant repaying $555,882.47 to Flexicore. The district attorney then pursued criminal charges against appellant.

In a three-count indictment, appellant was charged in part as follows:

<u>COUNT I</u>

On or about and between January 1, 1999 and March 1, 2008, pursuant to one scheme and continuing course of conduct, [Terry Smith] did unlawfully appropriate property, to wit: money, of the aggregate value of $200,000.00 or more, from Sandra Jenkins and/or Joseph Phillips, hereinafter referred to as the owner, without the effective consent of the owner, and with the intent to deprive the owner of the property.

<u>COUNT II</u>

On or about and between January 1, 1999 and March 1, 2008, pursuant to one scheme and continuing course of conduct, [Terry Smith] did unlawfully, intentionally and knowingly misapply property, to wit: money of the aggregate value of $200,000.00 or more that the Defendant held as a fiduciary but not as a commercial bailee, in a manner that involved a substantial risk of loss to the owner Sandra Jenkins and/or Joseph Phillips.

<u>COUNT III</u>

January 1, 1999 and March 1, 2008, pursuant to one scheme and continuing course of conduct, [Terry Smith did] knowingly

4

acquire or conceal or possess or transfer the proceeds of criminal activity, to wit: theft of the aggregate value of $200,000.00 or more and or misapplication of fiduciary property of the aggregate value of $200,000.00 or more.

Appellant pleaded guilty to each offense before the trial court, which admonished appellant, both orally and in writing, as to the consequence of her pleas. The appellant acknowledged, orally and in writing, that she understood the admonishments and that her pleas were made freely and voluntarily. Appellant did not, however, waive her right to a jury trial. The paragraph in the plea papers waiving appellant's right to a jury was crossed out.

Appellant also signed a written judicial confession and stipulation of evidence. The trial court accepted appellant's pleas but did not make a finding of guilt.

Following jury selection, the trial court read each count of the indictment, and appellant pleaded guilty in the presence of the jury to each offense. With respect to the punishment phase, the State presented four witnesses, including Joseph Phillips and Sandra Jenkins. The State also introduced voluminous documentary records, including bank records and checks, summaries of the bank records, and the agreed judgment from the civil suit, ordering appellant to pay $1,350,000 to Flexicore.

In her defense, appellant presented several character witnesses, who testified that she was a good and selfless person and that she was remorseful for her crimes.

5

Witnesses also testified that appellant was the caretaker for her husband, who suffered complications due to diabetes, and for her elderly mother-in-law. In addition, the defense presented expert testimony that appellant was a low risk to commit future crimes and was a good candidate for community supervision.

After each side presented its evidence, the jury was removed from the courtroom. At that time, appellant moved "for judgment of acquittal or, in the alternative, request that the Court instruct the jury to return a verdict of not guilty." Appellant asserted that the State had not proven the three charged offenses of theft, misapplication of fiduciary property, and money laundering. Appellant pointed out that the subject of each offense, as charged, involved an aggregate value of over $200,000. Appellant asserted that the two complainants identified in the three-count-indictment—Joseph Phillips and Sandra Jenkins—each testified, respectively, that he and she had not personally lost money in excess of $200,000 as a result of appellant's actions, as charged. The trial court denied appellant's motion for acquittal and for instructed verdict.

Before the jury was brought back to the courtroom, appellant moved the trial court to allow her to withdraw her pleas of guilty, "in view of the fact that the prosecution apparently is unable to prove the case as alleged in the indictment." The trial court denied appellant's motion to withdraw her pleas. A charge conference was held with the attorneys after which the trial court read its charge to

the jury. Based on appellant's guilty pleas, the trial court instructed the jury to find appellant guilty of each offense as charged in the indictment. In returning its verdict, the jury assessed appellant's punishment at (1) 25 years in prison for the theft offense; (2) 20 years in prison for misapplication of fiduciary property offense; and (3) 20 years in prison for the money laundering offense, to be served concurrently, with a $10,000 fine for each offense.

Appellant filed a motion for new trial, which was overruled by operation of law. These three appeals followed in which appellant raises the identical three issues.

Before she filed her opening brief, appellant filed a motion to abate the appeals to permit a hearing on her motion for new trial. Appellant's motion for abatement was denied.

**Withdrawal of Pleas**

In her second issue, appellant asserts that the trial court erred because it did not allow her to withdraw her guilty pleas after the close of evidence before the case was sent to the jury.

A defendant may withdraw a guilty plea entered before a jury at any time before the jury retires to deliberate. *Mendez v. State*, 138 S.W.3d 334, 345 (Tex. Crim. App. 2004); *McWherter v. State*, 571 S.W.2d 312, 313 (Tex. Crim. App. [Panel Op.] 1978). This right has been described as an unqualified one, derived

directly from the "inviolate" right to trial by jury. *Abrego v. State*, 977 S.W.2d 835, 837 (Tex. App.—Fort Worth 1998, pet. ref'd) (citing *Fairfield v. State*, 610 S.W.2d 771, 776 (Tex. Crim. App. [Panel Op.] 1981)). Because appellant requested to withdraw her pleas before the jury retired to deliberate, the trial court erred by refusing to allow her to withdraw her pleas.

Next, we must consider whether the error harmed appellant. The right to withdraw a guilty plea is derived directly from the constitutional right to trial by jury. *Fairfield*, 610 S.W.2d at 776. Thus, we review the trial court's error under the standard for errors that are constitutional in nature. *See* TEX. R. APP. P. 44.2(a); *Abrego*, 977 S.W.2d at 839. The harm standard for constitutional error requires an appellate court to "reverse a judgment of conviction or punishment unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment." TEX. R. APP. P. 44.2(a). The failure to allow a defendant to timely withdraw a guilty plea is harmless if there is no evidence suggesting the defendant is not guilty or is guilty only of a lesser included offense. *See Payne v. State*, 790 S.W.2d 649, 651 (Tex. Crim. App. 1990); *Abrego*, 977 S.W.2d at 839.

In this case, there was no factual dispute that appellant, in her role as Flexicore's controller, took, without the consent or authorization of Flexicore, an aggregate sum of money in excess of $200,000. The evidence of appellant's guilt

8

for each offense was overwhelming, undisputed, and uncontradicted. Nonethless, appellant claims that the State's evidence showed that she had not taken in excess of $200,000 from either Joseph Phillips or Sandra Jenkins, as charged in the indictment. Appellant relies on Phillips's testimony that appellant's theft had caused him personally to lose approximately $55,000 in company profit sharing. Appellant also cites Sandra Jenkins's testimony that Jenkins had not personally lost any money as a result of appellant's actions.

Appellant points out that each offense charged involved an allegation that appellant had stolen more than $200,000. Appellant intimates Phillips's and Jenkins's testimony indicates that appellant is either not guilty or is guilty only of a lesser offense because the testimony shows that she did not steal in excess of $200,000 from either Phillips or Jenkins personally. Appellant's claim, however, misses the mark.

The indictment named Phillips and Jenkins, alternatively, as the "owner" of the money taken by appellant. Pursuant to the Penal Code, "owner" means a person who has title to or possession of the property, whether lawful or not, or one who has a greater right to possession of the property than the actor. *See* TEX. PENAL CODE ANN. § 1.07(a)(35) (Vernon Supp. 2013). When stolen property is owned by a corporation, such as in this case, it is permissible to allege in the indictment that such property was taken from the custody and control of a natural

9

person acting for the corporation.[3]  *See Castillo v. State*, 469 S.W.2d 572, 573 (Tex. Crim. App. 1971); *Campos v. State*, 317 S.W.3d 768, 774 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd); *see also Lewis v. State*, 193 S.W.3d 137, 140 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (stating that, when a corporation owns property at issue, State may allege ownership in "special owner").  For this reason, it was permissible to name Phillips, who was Flexicore's president, and Jenkins, a member of the board of directors and part owner of Flexicore, each as an "owner" of the money stolen by appellant from Flexicore.  The State was not required to show that appellant had stolen in excess of $200,000 from either Phillips or Jenkins personally, as appellant intimates.

---

[3]  The evidence showed that, at a minimum, Sandra Jenkins had a greater right of possession to the money appellant stole from Flexicore than did appellant. Appellant, as controller, was authorized to manage Flexicore's accounts payable and receivable and, as Phillips testified, she "handle[d] the money side of the business."  Nonetheless, the evidence showed that she was an employee of Flexicore, who breached her duties to the company and exceeded her authority by writing checks to herself and to her husband's business for unauthorized sums of money, which in the aggregate, were far in excess of $200,000.  In contrast, Jenkins testified that she was part owner of the privately held corporation and was a member of its board of directors.  Jenkins was an owner within the meaning assigned by the Penal Code.  *See Freeman v. State*, 707 S.W.2d 597, 605 (Tex. Crim. App. 1986) ("Ownership of some form of possessory interest in someone other than the accused is an essential element of the offense.  Such must be alleged and proved.  However, where the accused does not assert a possessory interest in property allegedly stolen, but the State proves that another had a possessory interest in the property, then, as a matter of law, between the two, the latter has established that he had the greater right to possession of the property, and in turn the State has established a prima facie case of ownership.").

We conclude, beyond a reasonable doubt, that the error of denying appellant the right to withdraw her guilty pleas did not contribute to her convictions or to punishment. *See* TEX. R. APP. P. 44.2(a); *see also Payne*, 790 S.W.2d at 651–52; *Abrego*, 977 S.W.2d at 839. We hold that the error was harmless error. *See* TEX. R. APP. P. 44.2(a).

We overrule appellant's second issue in each appeal.

## Compliance with Code of Criminal Procedure Article 1.15

In her third issue, appellant complains that the State failed to introduce sufficient evidence to support the judgments of conviction as required by Code of Criminal Procedure article 1.15, which provides, in part, as follows:

> No person can be convicted of a felony except upon the verdict of a jury duly rendered and recorded, unless the defendant, upon entering a plea, has in open court in person waived his right of trial by jury in writing in accordance with Articles 1.13 and 1.14; provided, however, that it shall be necessary for the state to introduce evidence into the record showing the guilt of the defendant and said evidence shall be accepted by the court as the basis for its judgment and in no event shall a person charged be convicted upon his plea without sufficient evidence to support the same. . . .

TEX. CODE CRIM. PROC. ANN. art. 1.15 (Vernon 2005).

By its plain language, article 1.15 does not apply when the defendant does not waive her right to a jury trial. *See id.* Here, appellant did not waive her right to a trial by jury. The plea papers show that the paragraph stating that appellant waived her right to a jury was crossed out. Appellant made a plea of guilty before

11

the jury. "[A] plea of guilty before a jury is a trial by jury and does not constitute waiver of trial by jury." *See Williams v. State*, 674 S.W.2d 315, 318 (Tex. Crim. App. 1984). Thus, appellant received a trial by jury and article 1.15 did not apply. *See* TEX. CODE CRIM. PROC. ANN. art. 1.15.

Concomitantly, the State was not required to introduce evidence of appellant's guilt beyond her guilty pleas to the jury. "In felony cases, a plea of guilty before the jury admits the existence of all elements necessary to establish guilt and, in such cases, the introduction of evidence by the State is only to enable the jury to intelligently determine punishment." *Stahle v. State*, 970 S.W.2d 682, 688 (Tex. App.—Dallas 1998, pet. ref'd); *see also Darden v. State*, 430 S.W.2d 494, 495 (Tex. Crim. App. 1968); *Williams*, 674 S.W.2d at 318.

We note that this case is similar to *Helton v. State*, 886 S.W.2d 465 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd). There, the appellant had pleaded guilty to the trial court and, then, again pleaded guilty to the jury. *See id.* at 466. On appeal, the appellant asserted that the trial court had erred by instructing the jury to find him guilty of the charges brought against him. *Id.* In *Helton*, the appellant claimed, "[T]he [trial] court violated [article] 1.15 by finding appellant guilty without fulfilling that statute's requirement that the State put on evidence showing appellant's guilt. Consequently, appellant argues, the court's judgment of guilt is unsupported by evidence."

12

In rejecting the appellant's argument, we held as follows:

> [Article] 1.15 does not apply to the facts of this case. Although appellant initially pled guilty to the court, he superseded the initial plea by subsequently pleading guilty to the jury. A plea of guilty to a felony before a jury admits the existence of all incriminating facts necessary to establish guilt. . . . Appellant's plea having become a guilty plea to the jury instead of to the court, there was no need for the State to introduce evidence showing his guilt. . . . . When a defendant pleads guilty before a jury, no evidence need be entered. . . . Evidence is necessary for a guilty plea before the court only. . . . Thus, we hold, under the facts of this case, it was not necessary for the State to introduce evidence showing appellant's guilt.

*Id.* (citations and footnote omitted); *see also Williams*, 674 S.W.2d at 319–20 (stating that no evidence need be entered when appellant pleads guilty before jury; evidence is necessary only for guilty plea before court).

Because appellant did not waive her right to a jury and pleaded guilty before the jury, article 1.15 does not apply to the facts of this case. *See Helton* 886 S.W.2d at 466; *see also Williams*, 674 S.W.2d at 318. We hold that it was not necessary for the State to introduce evidence showing appellant's guilt; her guilty pleas before the jury admitted the existence of all the elements necessary to support her convictions. *See Helton*, 886 S.W.2d at 466; *see also Williams*, 674 S.W.2d at 318.

We overrule appellant's third issue in each appeal.

13

**Abatement for New Trial Hearing**

In her first issue, appellant contends that we should reconsider her motion to abate the appeals—previously denied in these appeals—to permit the trial court to conduct a hearing on her motion for new trial, which she filed on July 28, 2012. Appellant asserts that we should abate the appeals because the record indicates that the trial court had intended to conduct a hearing on the motion but was prevented from doing so when appellant was mistakenly transferred from the county jail to state prison. In an affidavit attached to her motion to abate, appellant asserted that the trial court coordinator scheduled a hearing on her motion for new trial.

The clerk's record contains a letter from the court coordinator stating that a hearing was scheduled on the motion for new trial on August 22, 2012. The docket sheet also indicates that a bench warrant was issued. However, there is no signed order from the trial court granting a hearing on her new trial motion.

Appellant averred in her affidavit that, "due to a clerical error," she was moved from the county jail to prison on July 30, 2012. She asserted that she was not returned to county jail until September 17, 2012. At that point, the 75 day-period for the trial court to rule on the motion for new trial had expired. *See* TEX. R. APP. P. 21.8.

In her brief, appellant asserts that "[t]hrough no fault of her own, appellant was denied a hearing that the trial court felt she was entitled to." We review a

14

court's denial to hold a hearing on a motion for new trial under an abuse of discretion standard. *See Smith v. State*, 286 S.W.3d 333, 339 (Tex. Crim. App. 2009). Had the trial court here refused to hold a hearing on appellant's motion for new trial, we would not abate for a new trial hearing if the refusal was within the trial court's discretion. *See id.*

The Court of Criminal Appeals has stated the right to a hearing on a motion for new trial is not an "absolute right." *Reyes v. State*, 849 S.W.2d 812, 815 (Tex. Crim. App. 1993). The purpose of a hearing on a motion for new trial is (1) to decide whether the cause should be retried and (2) to prepare a record for presenting issues on appeal in the event the motion is denied. *Smith*, 286 S.W.3d at 338. A hearing is not required when the matters raised in the motion for new trial are subject to being determined from the record. *Id.* However, even a defendant who has raised matters not subject to being determined from the record is not entitled to a hearing on her motion for new trial unless she establishes the existence of "reasonable grounds" showing that the defendant could be entitled to relief. *Id.* at 339.

Here, appellant first asserted in her motion for new trial that the evidence in support of her plea was "insufficient to support the allegation of loss." As discussed above, a plea of guilty before the jury in a felony case admits the existence of all elements necessary to establish guilt; the introduction of evidence

15

by the State is only to enable the jurors to intelligently exercise the discretion which the law vests in them to determine punishment. *Addicks v. State*, 15 S.W.3d 608, 612 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd) (citing *Holland v. State*, 761 S.W.2d 307, 312 (Tex. Crim. App. 1988)); *Stahle*, 970 S.W.2d at 688; *see also Williams*, 674 S.W.2d at 318. In such cases, the plea of guilty is conclusive as to the defendant's guilt, and there is no question of the sufficiency of the evidence on appeal. *Ex parte Martin*, 747 S.W.2d 789, 792 (Tex. Crim. App. 1988); *Ratthamone v. State*, 111 S.W.3d 784, 785–86 (Tex. App.—Fort Worth 2003, no pet.); *Stahle*, 970 S.W.2d at 688. Thus, appellant was not entitled to a new trial on this point because the sufficiency of the evidence is determinable on the record and "reasonable grounds" do not exist indicating that she could be entitled to relief. *See Smith*, 286 S.W.3d at 338–39.

Appellant also asserted in her new trial motion that the trial court should "revisit the plea" and her sentence "in the interest of justice." Rule 21.3 of the Texas Rules of Appellate Procedure lists many of the grounds for which a trial court must grant a new trial. TEX. R. APP. P. 21.3. The rule, however, is not an all-inclusive list. *State v. Herndon*, 215 S.W.3d 901, 907 (Tex. Crim. App. 2007).

A new trial may be granted "in the interest of justice." *See State v. Zalman*, 400 S.W.3d 590, 593 (Tex. Crim. App. 2013). Trial courts, however, do not have the discretion to grant a new trial unless the defendant demonstrates that her first

16

trial was "seriously flawed and that the flaws adversely affected his substantial rights to a fair trial." *Herndon*, 215 S.W.3d at 909. Although it has wide discretion in ruling on a motion for new trial, which sets out a valid legal claim, a trial court should exercise that discretion by balancing a defendant's "interest of justice" claim against both the interests of the public in finality and the harmless-error standards set out in Rule of Appellate Procedure 44.2. *Id.* at 908. Trial courts should not grant a new trial if the defendant's substantial rights were not affected. *Id.*

Here, appellant did not specify in her motion for new trial the reason why the trial court should grant her a new trial in the interest of justice. Consequently, appellant did not establish that "reasonable grounds" existed entitling her to a new trial in the interest of justice. *See Smith*, 286 S.W.3d at 339.

Appellant next asserted in her new trial motion that her sentences are out of proportion to the offenses committed. She also claimed that the sentences fail to serve the purposes of retribution, deterrence, or rehabilitation.

The Eighth Amendment, which forbids cruel and unusual punishment, prohibits a sentence that is greatly disproportionate to the crime it punishes. *See Rivera v. State*, 363 S.W.3d 660, 678 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (citing *Ewing v. California*, 538 U.S. 11, 20, 123 S. Ct. 1179, 1185 (2003)). The Eighth Amendment does not require strict proportionality between crime and

sentence; rather, it forbids only extreme sentences that are grossly disproportionate to the crime. *Id.* Four goals of penal sanctions have been recognized as legitimate: retribution, deterrence, incapacitation, and rehabilitation. *Meadoux v. State*, 325 S.W.3d 189, 195 (Tex. Crim. App. 2010). "A sentence lacking any legitimate penological justification is by its nature disproportionate to the offense." *Id.*

Appellant committed three first-degree-felony offenses. The statutory range of punishment for a first-degree-felony offense is confinement for 5 to 99 years, or life, and a fine not to exceed $10,000. *See* TEX. PENAL CODE ANN. 12.32 (Vernon 2011). Appellant received the maximum fine; however, the evidence at trial showed that appellant's offenses involved stealing over $1.3 million from her employer for whom she had worked for many years in a position of trust. The jury assessed confinement in each of the three offenses at 25 years, 20 years, and 20 years, respectively, to be served concurrently. The punishments assessed are within the statutory range for each offense and are nearer to the minimum period of confinement available under the statute. *See id.*

In her motion for new trial, appellant complains that the "sentence does not serve the purpose of retribution, deterrence, or rehabilitation" because she has paid back "over a half million dollars," has exhausted her assets, and will likely not be able to repay the remainder of the money. In addition, she asserts that

18

rehabilitation has already been achieved because she accepted responsibility by pleading guilty.

The record shows that appellant pleaded guilty before the jury. During trial, the defense offered the testimony of L. Buchanan, who had compiled the pre-sentence investigation report. She testified that appellant had paid back approximately $550,000 and was unlikely to be able to ever repay the remainder of the money. The defense also offered the testimony of other witnesses who stated that appellant was remorseful. In short, because the matters of which she complained relating to her sentences are determinable from the record, appellant did not show she was entitled to a new trial on these bases. *See Wallace*, 106 S.W.3d at 108.

Lastly, appellant asserted that she was entitled to a hearing on her motion for new trial regarding punishment because the jury did not hear about her "deeply held religious convictions which induced [her] to come forward and offer a plea." She claimed that "[s]he was the sole person who could discuss this deeply personal awakening." Appellant, however, acknowledges that she chose not to testify on the advice of counsel, and she makes no allegation that her trial counsel was ineffective. Thus, because she chose not to testify, appellant did not show that reasonable grounds existed entitling her to a new trial. *See id*.

We conclude that it would have been within the trial court's discretion to refuse to hold a hearing on appellant's motion for new trial, regardless of whether the trial court had intended to hold the hearing. *Smith*, 286 S.W.3d at 339. Thus, we will not abate the appeals for a new trial hearing.

We overrule appellant's first issue.

## Conclusion

We affirm the judgment of the trial court in each appeal.


Laura Carter Higley
Justice

Panel consists of Justices Keyes, Higley, and Massengale.

Do not publish. TEX. R. APP. P. 47.2(b).