Opinion issued December 5, 2019



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-18-01126-CR

_____

**JEVON STONE, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 412th District Court**
**Brazoria County, Texas**
**Trial Court Case No. 85569-CR**

---

## MEMORANDUM OPINION

Appellant, Jevon Stone, was indicted for the first-degree felony offense of murder. Appellant pleaded guilty before the trial court to the third paragraph of the indictment, and the State abandoned paragraphs one and two. After a jury was impaneled, appellant pleaded guilty before the jury to the remaining paragraph of

the indictment. Following a unitary trial,[1] the jury assessed appellant's punishment at thirty years' confinement. In two points of error, appellant contends that (1) the trial court's certification of his right of appeal is incorrect and (2) his guilty plea is not supported by the record or sufficient evidence to sustain his conviction. We affirm.

## Background

On October 11, 2018, appellant was indicted for murder. The indictment alleged:

THE GRAND JURY, for the County of Brazoria, State of Texas, duly selected, empaneled, sworn, charged, and organized as such for the District Court of said County, upon their oaths present in and to said court that **JEVON STONE,** hereinafter styled Defendant, on or about the **21st day of July, 2017**, and before the presentment of this indictment, in the County and State aforesaid, did then and there intentionally or knowingly cause the death of an individual, namely, Michael Holmes by shooting the said Michael Holmes with a firearm;

And the Grand Jurors aforesaid, upon their oaths aforesaid, in said County and State, do further present in and to said Court that **JEVON STONE**, hereinafter styled Defendant, on or about the **21st day of July, 2017**, and before the presentment of this indictment, in said County and State, did then and there with intent to cause serious bodily injury to an individual, namely, Michael Holmes, commit an act clearly dangerous to human life, to-wit: did shoot the said Michael Holmes with a firearm, that caused the death of the said Michael Holmes;

And the Grand Jurors aforesaid, upon their oaths aforesaid, in said County and State, do further present in and to said Court that **JEVON**

---

[1] Once a plea of guilty in a felony case is entered either before a judge or jury, the procedure becomes a "unitary trial" to determine the remaining issue of punishment. *See In re State ex rel. Tharp*, 393 S.W.3d 751, 757 (Tex. Crim. App. 2012).

2

**STONE**, hereinafter styled Defendant, on or about [the] **21st day of July, 2017**, and before the presentment of this indictment, in said County and State, did then and there intentionally or knowingly commit or attempt to commit a felony, to wit: Aggravated Robbery and in the course of and in furtherance of the commission or attempt to commit said felony, the defendant did commit or attempt to commit an act clearly dangerous to human life, to wit: did shoot Michael Holmes with a firearm that caused the death of an individual, namely, Michael Holmes[.]

The case was called for trial on November 5, 2018. Before jury selection began, appellant indicated that he wanted to plead guilty to the charged offense and for the jury to assess punishment. Upon questioning by his trial counsel, appellant affirmed that, by entering his guilty plea, he was waiving any right to appeal issues arising from the guilt-innocence phase of trial. Appellant acknowledged that the only issue to be decided by the jury would be sentencing, and that the punishment range was a term of imprisonment between five and ninety-nine years or life, and up to a $10,000 fine. The trial court asked appellant, "understanding that you have a right to a trial by jury as to the guilt-innocence of the charges against you, do you still insist on waiving your right to a trial by jury?" to which appellant responded affirmatively.

Appellant confirmed that his signature appeared on Defendant's Admonitions, Waivers, Judicial Confessions, Statements, Plea, Probation, and Appeal—Felony Less than Capital. The signed document included a confession of guilt and stipulations to all the facts contained in the indictment as well as a waiver of the right

3

to appeal the guilt-innocence phase of trial. Appellant further confirmed that his signature appeared on the trial court's Certification of Defendant's Right of Appeal, and that he understood that he was waiving his right to appeal as to the guilt-innocence phase of trial. The certification, which contains three check-marked boxes and the trial court's written notations made at the time of appellant's guilty plea, states, in relevant part:

I, judge of the trial court, certify this criminal case:

☑ is not a plea-bargain case *as to punishment only*, and the defendant has the right of appeal, *as to punishment only.*

☐ is a plea-bargain case, but matters were raised by written motion filed and ruled on before trial and not withdrawn or waived, and the defendant has the right of appeal.

☐ is a plea-bargain case, but the trial court has given permission to appeal, and the defendant has the right of appeal.

☑ is a plea-bargain case *as to guilt innocence only*, and the defendant has NO right to appeal *guilt innocence and all pretrial matters*.

☑ the defendant has waived the right of appeal *for guilt innocence and all pretrial matters*.[2]

Appellant entered a guilty plea, and the trial court found that the evidence was sufficient to sustain appellant's conviction.

Following a conference with the State, trial counsel clarified that although the indictment contained three paragraphs, appellant was pleading guilty to paragraph

---

[2]     The trial court's handwritten notations appear in italics.

4

three only. Trial counsel requested that appellant be permitted to withdraw his guilty plea to the indictment as a whole, enter a plea of guilty to the third paragraph, and enter a plea of not guilty to the first and second paragraphs of the indictment. Trial counsel then stated, "We believe that upon entering our plea to the third paragraph that the State will be filing or making a motion to abandon Paragraphs One and Two." The State affirmed, stating "[t]hat is the understanding that we've— agreement we've come upon." Following this exchange, appellant withdrew his previous plea of guilty to the indictment as a whole, pleaded not guilty to paragraphs one and two of the indictment, and pleaded guilty to paragraph three. The State subsequently abandoned paragraphs one and two of the indictment.

Following appellant's guilty plea, the State offered the indictment and a large portion of the investigating officer's offense report detailing the allegations. The report, which mirrored the testimony and evidence that was presented during the unitary trial, included a summary of the investigating officer's interviews with several witnesses, including Braylee Busby. Busby told the officer that appellant had contacted her in the early morning hours of July 21, 2017 and told her to tell anyone who asked that he had been with her all night. Appellant told Busby that he and his friends had gone to "Mikey's" to rob him of money and marijuana. When they were unable to kick the door in, they kicked in the window instead. Appellant told Busby that he saw Mikey, who was on the couch, reach for a gun so he shot

5

Mikey about five or six times. Appellant also told Busby that he had a Glock, a revolver, and a shotgun, and that he and his friends were trying to rob Larry Ortiz and Zae Torres but got Mikey instead.

After a jury was impaneled, the State read the remaining paragraph of the indictment to which appellant pleaded guilty. The State presented evidence showing that (1) in the late evening hours of July 20, 2017, appellant and several individuals entered an apartment to rob its occupants of marijuana, guns, and money; (2) in the course of the robbery, Michael Holmes was shot six times and killed; (3) during his interview with police, appellant confessed to being present at the apartment, attempting to kick in the front door, and firing into the room where Holmes was sleeping; (4) several witnesses directly implicated appellant as a shooter; (5) a forensic download of appellant's cell phone revealed a video created on July 22, 2017, showing several weapons, including a nine-millimeter handgun, the same type of weapon from which six spent shell casings were found at the crime scene; and (6) appellant's cell phone contained a personal note, stating, "Man, who would have thought at 18 I'd already have a body . . . three guns, a .38, 9 and a shotty, living in a world so cold. It's either kill or be killed."

During closing arguments, trial counsel argued that appellant bore less moral culpability than his co-conspirators:

> The problem is that they've got no evidence as to who the shooter is.
> And one of the things that we did talk about during voir dire is the role

6

that people play. You get punished depending on how much you participated or what your role was. Jevon has pled guilty to agreeing to commit an aggravated robbery, to participating in that aggravated robbery in which Mikey Holmes was killed. That's what he's pled to. He has not pled to being the individual that comes in through the window, sees Mikey, and intentionally and knowingly points a gun and just guns him down in anger. There was no anger. . . . He knew of him, but he's not going to be the angry individual that fires repeated rounds into Mikey.

Following closing arguments, the jury sentenced appellant to thirty years' confinement.

## Certification of Right to Appeal

In his first point of error, appellant contends that the trial court's certification of his right of appeal is in error. Specifically, he argues that the certification inaccurately reflects that the case is a plea bargain case.

### A. Applicable Law

Texas Rule of Appellate Procedure 25.2 provides that "[t]he trial court shall enter a certification of the defendant's right of appeal each time it enters a judgment of guilt or other appealable order . . . ." TEX. R. APP. P. 25.2(a)(2). If the trial court certification is defective, the clerk must notify the parties so that they can correct any mistakes. *Jones v. State*, 488 S.W.3d 801, 804 (Tex. Crim. App. 2016). The Texas Court of Criminal Appeals has held that a "defective certification includes one that is 'correct in form but which, when compared with the record before the court, proves to be inaccurate.'" *Id*. (quoting *Dears v. State*, 154 S.W.3d 610, 614

7

(Tex. Crim. App. 2005)).  "An appellate court is obligated to review the record to determine if the certification is contrary to the record and therefore defective."  *Id.* at 805.

Article 44.02 of the Code of Criminal Procedure provides a defendant the right to appeal.  *See* TEX. CODE CRIM. PROC. art. 44.02; TEX. R. APP. P. 25.2(a)(2).  Article 1.14 provides that a defendant in a non-capital felony case may waive any right secured to him by law.  *See* TEX. CODE CRIM. PROC. art. 1.14(a).  A waiver of the right to appeal is valid if it is made voluntarily, knowingly, and intelligently.  *Ex parte Delaney*, 207 S.W.3d 794, 796–97 (Tex. Crim. App. 2006); *Monreal v. State*, 99 S.W.3d 615, 617 (Tex. Crim. App. 2003).  A valid waiver of the right to appeal will prevent a defendant from appealing without the consent of the trial court. *Monreal*, 99 S.W.3d at 617.

To determine the validity of a waiver of a right to appeal and the terms of any agreement between a defendant and the State, we consider the written plea documents and the formal record in light of general contract law principles.  *See Jones v. State*, 488 S.W.3d 801, 805 (Tex. Crim. App. 2016); *Ex parte De Leon*, 400 S.W.3d 83, 89 (Tex. Crim. App. 2013).  A waiver of appeal prior to sentencing may be valid if it is bargained for—that is, if the State gives some consideration for the waiver, even if a sentence is not agreed upon.  *See Ex parte Broadway*, 301 S.W.3d 694, 699 (Tex. Crim. App. 2009). Once the trial court accepts the plea agreement, it

8

becomes binding on the State and the defendant and both parties are entitled to the benefit of the bargain. *See Ex parte De Leon*, 400 S.W.3d at 89; *State v. Moore*, 240 S.W.3d 248, 251 (Tex. Crim. App. 2007).

## B. Analysis

Appellant contends that the trial court's certification is incorrect because although it indicates that this is a plea bargain case he did not plead guilty pursuant to a plea bargain. The State asserts that appellant knowingly, voluntarily, and intelligently waived his right to appeal the guilt-innocence phase because he received adequate consideration in exchange for his waiver.

In *Jones v. State*, the defendant was charged with assault of a family member. 488 S.W.3d 801, 802 (Tex. Crim. App. 2016). Because the defendant had been twice convicted of prior felony offenses, his punishment range was elevated to a minimum prison sentence of twenty-five years with a maximum sentence of ninety-nine years or life in prison. *See id.* at 803. The defendant entered a plea of guilty to the charged offense without an agreed recommendation as to punishment from the State. *Id.* The State abandoned one of the two punishment enhancement paragraphs, lowering the minimum sentence to five years in prison, and the defendant pleaded true to the other paragraph. *See id.* The defendant signed a "Waiver of Constitutional Rights, Agreement to Stipulate, and Judicial Confession," which stated that he "waive[d] any right of appeal which I may have should the court accept the foregoing plea

9

bargain agreement between myself and the prosecutor." *Id.* The defendant also signed the Trial Court's Certification of Defendant's Right of Appeal, which stated that "the defendant has waived the right of appeal." *Id.* Following the unitary sentencing hearing, the trial court assessed the defendant's punishment at fifteen years' confinement. *See id.* The appeals court concluded that the trial court's certification indicating that the defendant had waived his right to appeal was supported by the record, and it dismissed the appeal for want of jurisdiction. *See id.* at 804.

On petition for discretionary review, the defendant challenged the court of appeals's dismissal of his appeal. *See id.* at 802. He argued that the trial court's certification, which indicated that he had waived his right of appeal, was defective because he had not signed any document that was adequate to show a valid waiver of his right to appeal and the record did not otherwise show that he had waived his right. *See id.* at 802. The Court of Criminal Appeals held that the State's agreement to abandon an enhancement paragraph—thereby reducing the defendant's minimum sentence—provided consideration for the defendant's waiver of his right to appeal. *See id.* at 808. In reaching its conclusion, the Court addressed the defendant's argument that his signature on the waiver of appeal in the plea papers should be disregarded because the waiver referred to a plea bargain where there was none. *See id.* at 808. The Court noted that although it was true that the type of plea agreement

10

at issue was different than a plea bargain case as that term is used in Rule of Appellate Procedure 25.2 because there was no agreement as to punishment, that fact did not render invalid the defendant's agreement to waive his appellate rights.[3] The Court concluded that the language in the "Waiver of Constitutional Rights" document was not limited to a plea-bargain case arising under Rule 25.2; rather, the language referred to a "plea bargain agreement" between the parties. *See id.* It also noted that the totality of the record revealed that, pursuant to that bargain, appellant agreed to plead guilty without an agreed recommendation and waive his right of appeal in exchange for the benefit of the State abandoning one of the two enhancements. *See id.* Declining to hold that the waiver should not be upheld simply because it was not a plea-bargain case under Rule 25.2, the Court concluded that the defendant's waiver of the right of appeal was "part of a more global plea agreement based on consideration other than an agreed punishment recommendation." *Id.*

Here, the trial court's certification contains a similar global plea agreement. Although there was no recommendation as to punishment, "a bargain of a different sort" originated from appellant's decision to plead guilty to the third paragraph of the indictment and waive his right of appeal as to the guilt-innocence phase of trial

---

[3]     Rule 25.2, which restricts an appellant's right of appeal in a plea-bargain case, defines a "plea bargain case" as "a case in which a defendant's plea was guilty or nolo contendere and the punishment did not exceed the punishment recommended by the prosecutor and agreed to by the defendant . . . ." TEX. R. APP. P. 25.2(a)(2).

11

in exchange for the State's agreement to abandon paragraphs one and two of the indictment. *See id.* at 808. Here, as in *Jones*, appellant signed a "Waiver of Constitutional Rights" which refers to a "plea bargain agreement" between the parties and is not limited to a plea-bargain case arising under Rule 25.2. The "Defendant's Admonitions" also affirm that appellant waived his right to appeal "a claim of error pertaining to guilty, as well as all pretrial matters." Appellant signed the trial court's certification, acknowledging the parties' agreement as reflected by the trial court's written notations that specifically waived the right to appeal the guilt-innocence phase of trial.

The record shows that appellant's waiver of his right to appeal was made knowingly, voluntarily, and intelligently. After appellant initially pleaded guilty to the entire indictment, the trial court permitted him to withdraw his plea, plead not guilty to paragraphs one and two, and plead guilty to paragraph three. Trial counsel advised the court that he had admonished appellant as to the third paragraph of the indictment, he had discussed the matter with the prosecutors and District Attorney, and that he understood that the State would abandon paragraphs one and two after appellant pleaded guilty to paragraph three. The prosecutor affirmed, stating "[t]hat is the understanding that we've—agreement we've come upon." Following this exchange, appellant withdrew his previous plea of guilty to the indictment as a whole, pleaded not guilty to paragraphs one and two of the indictment, and pleaded

12

guilty to paragraph three. The State subsequently abandoned paragraphs one and two of the indictment. The trial court accepted appellant's guilty plea to the third paragraph.

Thus, the record shows that appellant received consideration for his waiver in the form of the State's abandonment of paragraphs one and two of the indictment. Paragraphs one and two charged appellant with simply causing the death of Michael Holmes without further elaboration, whereas paragraph three alleged that appellant had committed the felony of aggravated robbery during which he committed an act clearly dangerous to human life. Appellant's strategy at trial was to accept responsibility for being a party to aggravated robbery that resulted in the death of Michael Holmes but to cast doubt on his direct responsibility for Holmes's death. In closing arguments, trial counsel argued to the jury that "[y]ou get punished depending on how much you participated or what your role was." He reminded the jury that although appellant pleaded guilty to participating in an aggravated robbery during which Holmes was killed, appellant did not plead "to being the individual that comes in through the window, sees Mikey, and intentionally and knowingly points a gun and just guns him down in anger." Appellant acknowledges this strategy in his brief, stating "[c]learly, it was Appellant's trial strategy that to enter a plea of guilty might mitigate punishment." Appellant waived a partial appellate right in order to strengthen his strategy at sentencing. *See Jones*, 488 S.W.3d at 807;

13

*see also Stanbery v. State*, No. 05-17-00105-CR, 2017 WL 1684715, at *2 (Tex. App.—Dallas May 3, 2017, no pet.) (mem. op., not designated for publication) (concluding defendant and State reached enforceable plea agreement where defendant waived his right to appeal in exchange for State's abandonment of two charges and agreement not to seek consecutive sentencing or deadly weapon findings on some of charged offenses).

The trial court's certification accurately describes a global plea agreement which was signed by appellant and supported by adequate consideration. The State and appellant negotiated appellant's plea of guilty to the third paragraph of the indictment conditioned upon the State's abandonment of the first and second paragraphs of the indictment and appellant's waiver of his right to appeal the guilt-innocence phase. *See Carson v. State*, 559 S.W.3d 489, 496 (Tex. Crim. App. 2018); *Jones*, 488 S.W.3d at 807–08. Because appellant's waiver was made in exchange for consideration given by the State, it was voluntary, knowing and intelligent and is enforceable against him. *See Jones*, 488 S.W.3d at 807–08; *Broadway*, 301 S.W.3d at 699. Therefore, we overrule appellant's first point of error.

**Evidence of Guilt in Support of Guilty Plea**

In his second point of error, appellant contends that his guilty plea is not supported by the record or sufficient evidence. Specifically, he argues that the

14

State's evidence consists of unsubstantiated claims that are unsupported by the evidence and does not satisfy article 1.15 of the Texas Code of Criminal Procedure.

Article 1.15 requires the State to offer sufficient proof to support any judgment based on a guilty or nolo contendere plea in a felony case tried to the court. TEX. CODE CRIM. PROC. art. 1.15; *Ex parte Williams*, 703 S.W.2d 674, 678 (Tex. Crim. App. 1986); *Keller v. State*, 125 S.W.3d 600, 604 (Tex. App.—Houston [1st Dist.] 2003, *pet. dism'd, improvidently granted*, 146 S.W.3d 677 (Tex. Crim. App. 2004). The State must "introduce evidence into the record showing the guilt of the defendant and said evidence shall be accepted by the court as the basis for its judgment and in no event shall a person charged be convicted upon his plea without sufficient evidence to support the same." TEX. CODE CRIM. PROC. art. 1.15; *see Keller*, 125 S.W.3d at 604.

Article 1.15, by its language, applies to a defendant's plea of guilty before a court. *See* TEX. CODE CRIM. PROC. art. 1.15. Here, appellant pleaded guilty before the jury to the first-degree felony offense of murder as set forth in the third paragraph of the indictment. *See* TEX. PENAL CODE § 19.02(b)(3). "In felony cases a plea of guilty before the jury admits the existence of all necessary elements to establish guilt, and in such cases, the introduction of testimony by the State is to enable the jury to intelligently exercise the discretion which the law vests in them touching the penalty to be assessed." *Ex parte Williams*, 703 S.W.2d at 678. "In such cases there is no

15

question of the sufficiency of the evidence on appeal . . . or on collateral attack." *Id.*; *Helton v. State*, 886 S.W.2d 465, 466 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd); *see also Garcia v. State*, No. 01-12-00488-CR, 2013 WL 1932175, at *3 (Tex. App.—Houston [1st Dist.] May 9, 2013, pet. ref'd) (mem. op., not designated for publication) (concluding that defendant's plea of guilty before jury to felony offense of unlawful possession of firearm established sufficiency of evidence). We hold that appellant's plea of guilty admitted the existence of all the elements necessary to support his conviction, and the State was not required to introduce evidence showing appellant's guilt. *See Williams v. State*, 674 S.W.2d 315, 318 (Tex. Crim. App. 1984); *Helton*, 886 S.W.2d at 466. Accordingly, we overrule appellant's second point of error.

## Conclusion

We affirm the trial court's judgment.

Russell Lloyd
Justice

Panel consists of Justices Lloyd, Goodman, and Landau.

Do not publish. TEX. R. APP. P. 47.2(b).

16